IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DONTE J. BUTCHER, | ) | CASE NO.  4:20-CV-01465-BMB |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| vs. | ) | UNITED STATES DISTRICT JUDGE |
| | ) | |
| WARDEN MICHAEL PHILLIPS, | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| Defendant. | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2.  Before the Court is the Petition of Donte Butcher ("Butcher" or "Petitioner"), for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254. Butcher is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case *State v. Butcher*, Portage County Court of Common Pleas Case No. 2015 CR 0567.  For the following reasons, the undersigned recommends that the Petition be DENIED.

## I.      Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).  The state appellate court summarized the facts underlying Butcher's conviction as follows:

> {¶ 1} Appellant, Donte J. Butcher, appeals his criminal convictions on two counts of corrupting another person with drugs, two counts of aggravated

1

trafficking, and one count of failure to appear for trial. In addition to contesting the sufficiency and weight of the evidence supporting the conviction, he raises four sentencing issues and the denial of his motion to suppress his identification as the seller of drugs by two witnesses. As the state agrees that the evidence does not support the conviction for failure to appear for trial, we reverse and remand to that extent.

{¶ 2} As of July 1, 2015, Dalton Lewis had been using heroin for a substantial period and had one prior felony conviction. Earlier in 2015, Lewis was being held in the Portage County Jail when he met Jason Beck, who was also addicted to heroin and had a prior criminal record. Beck was released from the jail in June 2015.

{¶ 3} On July 5, 2015, Lewis was temporarily furloughed from the county jail to obtain medical treatment for a serious skin condition. He went to live with his parents in Streetsboro, Ohio. Within one day of release, Lewis contacted Beck for the express purpose of purchasing heroin. Lewis had a plan to sneak the heroin into the jail after his furlough ended. Beck agreed to assist Lewis in exchange for a portion of the heroin.

{¶ 4} On the evening of July 6, 2015, Beck picked up Lewis near Lewis's residence and drove him to a house on Meridian Street, in Ravenna, Ohio. According to Lewis, Beck made two telephone calls to set up the heroin purchase while driving to Ravenna. One call was to a person named Byron.

{¶ 5} Upon arriving at the Meridian Street house, Beck went inside by himself and spoke with appellant. According to Beck, appellant said that, since he did not know Lewis, he wanted Lewis to come into the house to "make sure" he was not a police officer. Beck therefore brought Lewis inside.

{¶ 6} Since there were others in the home's kitchen, Lewis, Beck, and appellant went into a bathroom beside the kitchen and shut the door. At that point, Beck saw appellant give Lewis a package of drugs, thought to be heroin but later revealed to be fentanyl, in exchange for cash. Lewis then gave half of the drugs to Beck as agreed. Before leaving the bathroom, Lewis and Beck used a needle to inject the just purchased drugs into their arms while appellant watched.

{¶ 7} After walking back to Beck's vehicle and getting into the front passenger seat, Lewis lost consciousness. Believing that Lewis was no longer breathing, Beck quickly drove to a nearby parking lot and performed CPR. Lewis regained consciousness when Beck splashed him with water. Beck then drove to Streetsboro and dropped off Lewis. Lewis walked back to his parents' residence, hid the remaining drugs in the garage so that it could dry out, and went to bed.

2

{¶ 8} The next day, Lewis had his young daughter over to his parents' home for a day-long visit. Late in the day, he exchanged text messages with Beck, thanking him for saving his life the night before.

{¶ 9} After having a "camp-out" with his daughter and mother on the living room floor, Lewis awoke at approximately 2:00 a.m. and went to the garage, where he snorted the remainder of the drugs. A few minutes later, his mother happened to also wake up and began looking for Lewis. Knowing that her son regularly went to the garage to smoke cigarettes, she went there and found Lewis sitting in a chair unconscious. When both parents were unable to wake him, they called 9-1-1, and Lewis was transported to a local hospital, where he was treated and made a complete recovery.

{¶ 10} While Lewis was in the hospital, his mother retrieved the clothes he was wearing the night of the overdose and took them home to wash. In going through the pockets of his shorts, she found a cut-off straw. When detectives came to the Lewis home as part of the ensuing investigation, Lewis's mother gave them the straw. Subsequent tests on the inside of the straw revealed traces of fentanyl. No traces of heroin were found.

{¶ 11} Upon learning of Lewis's overdose from the hospital, two detectives from the Portage County Drug Task Force came to interview him while he was recuperating at the facility. Initially, Lewis told the detectives that he had bought the drugs from a man named Byron. Since the lead detective knew a man named Byron who also sold drugs at the Meridian Street house, he quickly located a photograph of Byron on his cell phone and showed it to Lewis, who confirmed that he knew the man in the photograph.

{¶ 12} As part of that initial interview, Lewis also told the detectives that Beck had played a role in purchasing the drugs. As a result, the detectives questioned Beck about the incident, and he informed them that Lewis bought the drugs from appellant. The investigation then focused upon appellant. Within five days of the initial interview with Lewis, both he and Beck were shown a photo array at different times and places and were asked to identify the individual who had sold the drugs. Both identified appellant.

{¶ 13} In August 2015, appellant was indicted on the following five charges: two counts of corrupting another person with drugs under R.C. 2925.02(A)(1); one count of corrupting another person with drugs under R.C. 2925.02(A)(3); and two counts of aggravated drug trafficking under R.C. 2925.03(A). All three corrupting charges are second-degree felonies. Both trafficking charges are fourth-degree felonies.

{¶ 14} Appellant moved to suppress both photo identifications contending that the photo array was too suggestive because he was the only person in the array who had a facial tattoo. Upon taking evidence regarding the procedure

3

the police officers followed in presenting the photo array to Lewis and Beck, the trial court overruled the suppression motion without an explanation.

{¶ 15} Appellant's jury trial was originally scheduled to go forward in March 2016. Appellant did not appear and was arrested a few days later in a neighboring county. Subsequently, the grand jury returned a supplemental indictment against appellant, charging him with failure to appear, a fourth-degree felony under R.C. 2937.29, and intimidation of a crime victim or witness, a third-degree felony under R.C. 2921.04(B).

{¶ 16} Trial on all charges commenced in July 2016, but resulted in a mistrial because during the state's case-in-chief one of its witnesses testified that appellant was presently incarcerated in a federal penitentiary.

{¶ 17} Appellant's trial was held in August 2016. At the close of the state's evidence, the trial court granted appellant's Crim.R. 29 motion for acquittal as to the charge of intimidation of a victim or witness. The remaining six charges were submitted to the jury. Appellant was found not guilty of the second count of corrupting another person with drugs under R.C. 2925.02(A)(1), but guilty of the remaining charges.

{¶ 18} After a sentencing hearing, appellant was sentenced to an aggregate prison term of eleven years. Regarding the corrupting another with drugs counts, the court ordered a mandatory term of five years, consecutive. As to the aggravated trafficking counts, the court imposed one-year terms, concurrent with each other and concurrent with the consecutive five-year terms. As to failure to appear, the court imposed a one-year term, consecutive to the consecutive five-year terms. The trial court imposed a $300 fine and court costs, to be satisfied within fifteen years.

*State v. Butcher*, 2018-Ohio-4943, 2018 WL 6483403, at **1-3 (Ohio Ct. App. Dec. 10, 2018.)

## II.    Procedural History

### A.    Trial Court Proceedings

On August 10, 2015, the Portage County Grand Jury indicted Butcher on the following charges: two counts of corrupting another with drugs in violation of O.R.C. § 2925.02(A)(1)) (Counts 1 and 2); two counts of aggravated trafficking in drugs in violation of O.R.C. § 2925.03(A)(C)(1)(a)) (Counts 3 and 4); and one count of corrupting another with drugs in violation of O.R.C. § 2925.02(A)(3)) (Count 5).  (Doc. No. 6-1, Ex. 1.)  Butcher pled not guilty to all charges.  (Doc. No. 6-1, Ex. 2.)

4

On September 4, 2015, Butcher moved to suppress the photo identifications and any evidence that identified Butcher as being involved in any illegal activity.  (Doc. No. 6-1, Ex. 3.)  Butcher argued the police used improper techniques to elicit identification, and that the photo spread was highly suggestive as he was the only person with a facial tattoo in the photo line-up.  (*Id.*)

That same day, Butcher moved for a reduction of his bond or a personal recognizance bond. (Doc. No. 6-1, Ex. 4.)  On September 15, 2015, the trial court denied the motion.  (Doc. No. 6-1, Ex. 5.)  Butcher then posted a ten per cent surety bond.  (Doc. No. 6-1, Ex. 6.)  After Butcher failed to appear for a pre-trial hearing, the trial court forfeited his bond and issued a warrant for his arrest.  (Doc. No. 6-1, Ex. 7.) Butcher then appeared in court and sought to have his bond reinstated, which the trial court granted after recalling the warrant.  (Doc. No. 6-1, Ex. 8-9.)

On November 17, 2015, the trial court court held a hearing on Butcher's motion to suppress.  (Doc. No. 6-1, Ex. 10.)  After construing the evidence in a light most favorable to the prosecution, the trial court denied the motion.  (*Id.*)

On March 16, 2016, the Portage County Grand Jury issued a supplemental indictment charging Butcher with one count of Failure to Appear in violation of O.R.C. §§ 2937.29 and 2937.99 (Count 6) and one count of Intimidation of a Crime Victim or Witness in violation of O.R.C. § 2921.04(B)) (Count 7). (Doc. No. 6-1, Ex. 11.)  Butcher pled not guilty to the additional charges and bond was set at $100,00.00 cash or surety.  (Doc. No. 6-1, Ex. 12.)  After another bond hearing the court set the bond at $2,000,000.00 cash or surety.  (Doc. No. 6-1, Ex. 13.)

On April 14, 2016, Butcher filed a *pro se* motion to dismiss the case due to insufficiency of the evidence and false statements made by the complainants.  (Doc. No. 6-1, Ex. 14.)  Butcher challenged the intimidation charge and the officer's complaint as lacking probable cause and a supporting affidavit.  (*Id.*)

5

Butcher also argued that information was withheld about a letter the victim wrote that Butcher had no involvement in the criminal case.  (*Id.*)

On April 22, 2016, the State moved to substitute true copies of the motion to dismiss, which could themselves be evidence, since the Bureau of Criminal Identification required an original for handwriting comparison.  (Doc. No. 6-1, Ex. 15.)  The State also moved to compel Butcher's counsel to produce an original document in his possession that was supposed to be signed by victim Jacob Beck for handwriting comparison by BCI.  (Doc. No. 6-1, Ex. 16.)  That same day, Butcher's counsel moved to withdraw from the case, saying he felt there were evidentiary issues that could make him a fact witness.  (Doc. No. 6-1, Ex. 17.)  On April 26, 2016, the trial court overruled the motion to dismiss, granted the State's motion to substitute, allowed counsel to withdraw, and appointed new counsel for Butcher.  (Doc. No. 6-1, Ex. 18-20.)

On July 26, 2016, the case went to jury trial.  (Doc. No. 6-1, Ex. 21.)  After the jury was impaneled and testimony begun, a witness "blurted out" that Butcher was in federal prison and the trial court granted Butcher's motion for a mistrial.  (*Id.*)

On August 30, 2016, the case again proceeded to jury trial.  (Doc. No. 6-1, Ex. 23.)  The trial court granted Butcher's motion for a Crim.R. 29 acquittal as to the charge of intimidation of a crime victim or witness charge.  (Doc. No. 6-1, Ex. 22.)  The jury found Butcher not guilty of corrupting another with drugs (Count 2), but guilty of all the remaining charges.  (Doc. No. 6-1, Ex. 23.)

On October 4, 2016, the trial court held a sentencing hearing and sentenced Butcher to five years in prison for each corrupting another with drugs charges, to be served consecutively, one year in prison for each aggravated trafficking in drugs charges, to be served concurrently to each other and to the other sentences, and one year in prison for the failure to appear conviction, to be served consecutively, for an

aggregate prison term of 11 years.  (Doc. No. 6-1, Ex. 24.)  The trial court also ordered Butcher to have no

contact with the victims and to pay a $300.00 fine and $239.00 in court costs within 15 years.  (*Id.*)

**B.    Direct Appeal**

Butcher, through counsel, filed a timely notice of appeal with the Eleventh District Court of

Appeals.  (Doc. No. 6-1, Ex. 25.)    In his appellate brief, Butcher raised the following assignments of

error:

> I.      The state failed to present sufficient evidence to support convictions of the
> offense(s) in Ct(s) 1 & 5, 3 & 4,, [sic] and 6, and the jury's verdicts, Appellants'
> [sic] convictions as a matter of law, reversible error; and/or The jury's verdicts
> were against the manifest weight of the evidence. (Td.1) & (Td.59).
>
> II.     The trial court erred in not entering a judgment of acquittal of Appellant pursuant
> to Crim.R. 29, either on defendant's motions or on its own.
>
> III.    The trial court erred in overruling Defendants' [sic] motion to suppress without
> stating its essential findings on the record as require [sic] under Crim.R. 12(F).
> (11/16/15,Tp. 33, Td.34).
>
> IV.     The court committed reversible error by ordering Appellant to have no contact
> with the victims. (Td. 173; Td.208/Tp.Sentencing, p/1:13).
>
> V.      The court committed reversible and plain error when it sentenced Appellant
> without notice required in §2929.19(B)(2)(F).(Td. 173;Td.208/Tp.Sentencing).
>
> VI.     The court erred in imposing a mandatory prison sentence upon Defendant.(Td.
> 175,Td. 208, Tp.).
>
> VII.    The court committed reversible error in assessing a fine and an "assessment and
> recoupment fee" without any regard to defendant's ability to pay those amounts,
> and commit [sic] reversible and plain error by ordering the defendant to pay an
> "assessment and recoupment fee" (Td. 173;Td.208).
>
> VIII.   The cumulative effect of multiple errors at trial, even if singularly not sufficient
> to warrant reversal, together deprived appellant of a fair trial and a denial of due
> process, the court denied Defendant a fair trial, by cumulative effect of its own
> errors.

(Doc. No. 6-1, Ex. 26.)  The State filed a brief in response.  (Doc. No. 6-1, Ex. 27.)

7

On December 10, 2018, the state appellate court affirmed in part, reversed in part, and remanded the case to the trial court.  (Doc. No. 6-1, Ex. 28.)  *See also State v. Butcher*, 2018-Ohio-4943, 2018 WL 6483403.  The appellate court determined that Butcher's conviction for failure to appear must be vacated as it was not supported by sufficient evidence.  (*Id.*)  The appellate court also ordered the no-contact order be stricken from the sentencing entry.  (*Id.*)  The appellate court affirmed the remaining convictions.  (*Id.*)

On December 27, 2018, Butcher filed a *pro se* motion for reconsideration.  (Doc. No. 6-1, Ex. 29.) On January 7, 2019, Butcher filed a *pro se* motion to certify a conflict.  (Doc. No. 6-1, Ex. 30.)

On January 15, 2019, the appellate court denied the motion for reconsideration as it was both untimely and not meritorious in that it raised arguments not previously raised on appeal.  (Doc. No. 6-1, Ex. 31.)  The appellate court also denied the motion to certify conflict because Butcher had not previously argued the claim conflict, nor was it discussed in the court's opinion.  (*Id.*)

On January 18, 2019, Butcher, through new counsel, filed a Notice of Appeal with the Supreme Court of Ohio.  (Doc. No. 6-1, Ex. 32.)  In his Memorandum in Support of Jurisdiction, Butcher raised the following Propositions of Law:

I.      The state must present sufficient evidence to support criminal convictions against an accused. When the state fails to do so, said convictions must be vacated.

II.     When criminal convictions are against the manifest weight of the evidence presented, said convictions must be vacated.

III.    The state must present sufficient evidence on each element of each offense charged, to allow the charges to go to the jury for consideration. When the state fails to do so, a motion for Judgment of Acquittal should be granted in favor of the accused.

IV.     The trial court has the duty to suppress evidence when it is demonstrated that an identification procedure was overly suggestive and there was a substantial likelihood of misidentification.

V.      An accused is deprived a fair trial and denied due process of law, when the trial court commits cumulative errors.

8

(Doc. No. 6-1, Ex. 33.)  On January 28, 2019, Butcher moved to supplement his memorandum with additional arguments.  (Doc. No. 6-1, Ex. 34.)  The State filed a response.  (Doc. No. 6-1, Ex. 35.)

On April 3, 2019, the Supreme Court of Ohio denied the motion to supplement and declined to accept jurisdiction of the appeal pursuant to S.Ct. Prac.R. 7.08(B)(4).  (Doc. No. 6-1, Ex. 36.)

**C.      Application to Reopen Appeal under Ohio App. R. 26(B)**

On March 11, 2019, Butcher, through counsel, filed an Application to Reopen Appeal Pursuant to Ohio App. R. 26(B).  (Doc. No. 6-1, Ex. 37.)    In his Application, Butcher argued he had received ineffective assistance of appellate counsel when appellate counsel failed to raise the following arguments on appeal:

> I.      The trial court erred when appellant was denied the effective assistance of counsel.
>
>> a.  Failure to move to dismiss or object to a defective indictment for corrupting another with drugs.
>>
>> b.  Failure to object to defective jury instructions.
>>
>> c.  Failure to present the favorable testimony of Amber Keim.
>
> II.     The evidence presented on the charges of Corrupting Another with Drugs was insufficient as a matter of law to sustain convictions.
>
> III.    The trial court erred when it permitted the irrelevant and unfairly prejudicial testimony of Akron Police Officer Brian Simcox, depriving appellant of a fair trial.

(*Id*.)  The State did not file a brief in opposition.  (Doc. No. 6-1.)

On August 4, 2020, the state appellate court denied Butcher's application for reopening his appeal. (Doc. No. 6-1, Ex. 38.) The appellate court found that Butcher failed to establish that appellate counsel's representation fell below the standard of reasonableness or that there was a reasonable probability that Butcher would have been successful if the omitted claims had been raised.  (*Id.*)

9

On August 14, 2020, Butcher, through counsel, moved the appellate court to reconsider whether appellate counsel had been ineffective for failing to assign as error the trial court's ruling that permitted testimony regarding Butcher's arrest on the failure to appear charge. (Doc. No. 6-1, Ex. 39.)  The State filed an opposition to the motion.  (Doc. No. 6-1, Ex. 40.)

On August 27, 2020, the appellate court denied the motion for reconsideration.  (Doc. No. 6-1, Ex. 41.)

On October 13, 2020, Butcher, through counsel, appealed the denial of his 26(B) Application to the Supreme Court of Ohio.  (Doc. No. 7-1.)

In his Memorandum in Support of Jurisdiction, Butcher raised the following Proposition of Law:

I.      A criminal appellant's rights to due process and effective assistance of counsel are violated where a court of appeals denies an application to reopen that demonstrates an appellant was deficiently represented on his direct appeal, because issues with a reasonable probability of success were not raised.

(Doc. No. 7-2.)

On December 15, 2020, the Supreme Court of Ohio declined to accept jurisdiction over Butcher's appeal.  (Doc. No. 9 at 3.)

### D.    Remanded Proceedings

On January 14, 2019, Butcher, *pro se*, filed a motion for acquittal under Crim.R. 29(C) on the two corrupting another with drugs convictions, a "Motion to Dismiss Void Indictments Under Crim.R.12(B) and or to Arrest the Judgment under Crim.R. 34," and a motion to modify verdicts. (Doc. No. 6-1, Ex. 42-44.)  Butcher also filed a "Pre Sentence Objection Based on Ineffective Assistance of Counsel and Trial Courts [sic] Failure to Inform Defendant of Maximum Penalty in Violation of Criminal Rule 11."  (Doc. No. 6-1, Ex. 45.)   On January 15, 2019, Butcher withdrew these motions without prejudice.  (Doc. No. 6-1, Ex. 46.)

10

During a sentencing hearing that same day, the trial court dismissed the failure to appear charge. (Doc. No. 6-1, Ex. 47.)  The trial court then proceeded to sentence Butcher to five years in prison for each corrupting another with drugs conviction, to be served consecutively, and twelve (12) months in prison for each aggravated trafficking in drugs convictions, to be served concurrently to each other and consecutive to the other sentences, for an aggregate prison term of 11 years. (*Id.*)  Butcher was also assessed a $300.00 fine and $6,437.39 in court costs that were to be paid within 15 years.  (*Id.*)  Finally, the court ordered Butcher to have no contact with the victims in this case.  (*Id.*)

On January 28, 2019, Butcher, *pro se*, filed a notice of appeal with the Eleventh District Court of Appeals.  (Doc. No. 6-1, Ex. 48.)  In his brief, Butcher raised the following assignments of error:

I.      The trial court lacked authority to change sentences that the appellant already completed. (1-15-2019, T.p. 12-16, T.d. 223).

II.     The trial court committed structural and plain error and denied appellant his Due Process rights when it imposed a sentence upon the appellant based on a crime not charged in his grand jury indictments. (1-15-19, T.p. 2-23, T.d. 1).

III.    The trial [sic] abused its discretion when it imposed an increased fine after it found appellant indigent (10-3-16 T.p., T.d. 175, 223).

IV.    The trial court abused its discretion when it included a no-contact order in the new sentencing entry.(T.d. 223).

V.     The trial court committed plain error when it failed to merge offenses as allied for sentencing purposes, violating the Double Jeopardy Clause of the 5th Amendment to the United States Constitution. (1-15-19, T.p. 4, T.d. 223).

VI.    Trial courts [sic] findings for consecutive sentences under 2929.14(c)(4) are not supported by the record.

VII.   Counsel's failure to object prejudiced the appellant and denied him his right to the effective assistance of counsel guaranteed by the 6th Amendment of the United States Consitution.

VIII.  The trial court lacked subject matter jurisdiction to impose any sentence on appellant.

(Doc. No. 6-1, Ex. 49.)  The State filed a brief in opposition.  (Doc. No. 6-1, Ex. 50.)

11

On September 16, 2019, the state appellate court affirmed the trial court's judgment, but determined that the trial court had exceeded the court's scope of remand.  (Doc. No. 6-1, Ex. 51.)  The remand was meant to eliminate the no-contact order and vacate the failure to appear conviction.  (*Id.*)  The appellate court modified the resentencing entry as follows: the two one-year terms for aggravated trafficking would be served concurrent to each other and concurrent to the corrupting another with drugs sentences, for an aggregate term of 10 years; Butcher was found not guilty of failure to appear; the no-contact order was vacated; and court costs would be $239.00.  (*Id.*)

On September 25, 2019, the State filed a motion for reconsideration. (Doc. No. 6-1, Ex. 52.)  On August 13, 2020, the appellate court denied the motion.  (Doc. No. 6-1, Ex. 53.)

Butcher did not appeal to the Supreme Court of Ohio.  (Doc. No. 6-1.)

**E.     Federal Habeas Petition**

On July 2, 2020, Butcher, through counsel, filed a Petition for Writ of Habeas Corpus in this Court and asserted the following grounds for relief:

> **GROUND ONE**:  Sufficiency of the Evidence
>
>> **Supporting Facts**: A different individual was the owner of the house where the drugs were bought, and that individual was originally named and identified by photo as the individual who sold the drugs. The drugs were never tested to determine their composition. The victim was not diagnosed with fentanyl overdose, and there was no direct evidence of one. There were significant chain of custody issues with a straw purportedly located by the victim's mother. The victim admitted he was not forced, threatened, or intimidated into using drugs for the first overdose. There was no evidence of purpose to cause serious physical harm or drug dependency regarding the second alleged overdose.
>
> **GROUND TWO**: Suppression of Photo Lineup
>
>> **Supporting Facts**: Petitioner was the only individual in the photo lineup with a facial tattoo. Another individual was identified during a separate photo array. That other individual was also identified by name. The identification of Petitioner took place several days after the drug sale, during which time the

12

alleged victim had at least two episodes wherein he lost consciousness. The identification procedure was contrary to Ohio statute.

**GROUND THREE**: Ineffective Assistance of Appellate Counsel

> **Supporting Facts**: Appellate Counsel filed deficient briefs at all stages of the direct appeal. The briefs contain arguments which are wholly inadequate, and are at times incoherent, which deprived Petitioner of due process in State appellate court. Moreover, Appellate Counsel failed to raise a meritorious argument regarding extraneous, highly prejudicial evidence regarding Petitioner's arrest which was improperly permitted at trial.

**GROUND FOUR**: Cumulative error

> **Supporting Facts**: The combined errors referenced in grounds one through three deprived Petitioner of due process at all stages of the proceedings in State Court, including trial and direct appeal.

(Doc. No. 1.)

On October 23, 2020, Warden Michael Phillips ("Respondent") filed the Return of Writ. (Doc. No. 6.)  On November 23, 2020, Butcher filed a Traverse.  (Doc. No. 7.)

Also on November 23, 2020, Butcher moved to stay the case as his appeal of the denial of his 26(B) application was still pending before the Supreme Court of Ohio.  (Doc. No. 8.)  On February 25, 2021, the Court denied the motion to stay, as the Supreme Court of Ohio had declined jurisdiction over the appeal in December 2020, but allowed Butcher the opportunity to file a supplemental brief on the claim of ineffective assistance of appellate counsel.  (Doc. No. 9.)  On March 26, 2021, Butcher filed a Supplemental Traverse.  (Doc. No. 10.)

13

### III. Non-cognizability

In Ground Four, Butcher asserts a claim of "cumulative error," arguing the "combined errors" in Grounds One through Three "deprived Petitioner of due process at all stages of the proceedings in State Court, including trial and direct appeal."  (Doc. No. 1 at 10.)

Respondent argues that Ground Four is non-cognizable.  (Doc. No. 6 at 35.)  As the United States Supreme Court "has not held that distinct constitutional claims can be cumulated to grant habeas relief," Butcher "is not entitled to habeas relief on the basis of 'cumulative error.'"  (*Id.*) (citations omitted).

In his Traverse, Butcher recognizes the Sixth Circuit authority "holding that cumulative error is no longer available in habeas proceedings" but "submits that the cumulative errors below have deprived him of Due Process in violation of the United States Constitution, necessitating relief in federal habeas corpus proceedings" and asks the Court to grant appropriate relief.  (Doc. No. 7 at 12.)

As Butcher recognizes, the Sixth Circuit recently reaffirmed the unavailability of cumulative error as a ground for habeas relief: "Lastly, Stober claims that the cumulative effect of the alleged errors he identifies should entitle him to relief, but this court has held that 'post-AEDPA [(Antiterrorism and Effective Death Penalty Act) ], not even constitutional errors that would not individually support habeas relief can be cumulated to support habeas relief.' *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005); *see also Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002) ("The Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief.")." *Stober v. Warden*, No. 19-3980, 2020 WL 1698589, at *4 (6th Cir. February 18, 2020).  Therefore, Ground Four is non-cognizable.

14

### IV. Review on the Merits

**A.**     **Legal Standard**

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings (as opposed to the dicta) of the United States Supreme Court.  *See Parker v. Matthews*, 567 U.S. 37, 132 S.Ct. 2148, 183 L.Ed.2d 32 (2012); *Renico v Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1865-1866 (2010); *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Shimel v. Warren,* 838 F.3d 685, 695 (6th Cir. 2016); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  Indeed, the Supreme Court has indicated that circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court."  *Parker*, 567 U.S. at 48-49; *Howes v. Walker*, 567 U.S. 901, 132 S.Ct. 2741, 183 L.Ed.2d 612 (2012).  *See also Lopez v. Smith*, —— U.S. ——, 135 S.Ct. 1, 4, 190 L.Ed.2d 1 (2014) (per curiam) ("Circuit precedent cannot 'refine or sharpen a general principle of Supreme Court jurisprudence into a

specific legal rule that this Court has not announced.'" (quoting *Marshall v. Rodgers*, 569 U.S. 58, 133 S.Ct. 1446, 1450, 185 L.Ed.2d 540 (2013))).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413. By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. *See also Shimel*, 838 F.3d at 695. However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor,* 529 U.S. at 411. Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at 410-12. "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 F. App'x 511, 516 (6th Cir. 2006) (citing *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA. *Id.* at 786 (internal quotation marks omitted). The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 785. The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal." *Id*. (internal

16

quotation marks omitted).  Therefore, a petitioner "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786–87.  This is a very high standard, which the Supreme Court readily acknowledged.  *See id.* at 786 ("If this standard is difficult to meet, that is because it is meant to be.")

    **1.**    **Ground One**

In Ground One, Butcher argues insufficiency of the evidence to support his convictions on several grounds: (a) a different individual owned the house where the drugs were purchased, and that individual was originally identified as the person who sold the drugs; (b) the drugs were never tested to determine their composition; (c) the victim was never diagnosed with a fentanyl overdose, and there was no direct evidence of one; (d) chain of custody issues with the straw found by the victim's mother in his clothing; (e) the victim admitted he was not forced, threatened, or intimidated into using drugs that resulted in the first overdose; and (f) there was no evidence of purpose to cause serious physical harm or drug dependency regarding the second alleged overdose.  (Doc. No. 1 at 5.)

Respondent asserts that Ground One is meritless, as "[c]onsidering the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the elements of the crimes beyond a reasonable doubt," and the state appellate court's decision was not contrary to or an unreasonable application of Supreme Court precedent, nor was it an unreasonable determination of the facts in the record.  (Doc. No. 6 at 22-24.)

In his Traverse, Butcher admits the "trace amount of fentanyl" in the straw was enough "for the finder of fact to reasonably infer that the drugs purchased by Lewis and Beck contained fentanyl," but argues that the remainder of the state appellate court's decision was unreasonable because it made further inferences from that evidence:

> Specifically, the Eleventh District opined that the "deception" element of the (A)(1) "Corrupting" count was met because "there is no dispute that Lewis and Beck went to the Meridian Street house to buy heroin, and that [Petitioner] sold them pure fentanyl." *Id.*, ¶40. First, there is no direct or circumstantial evidence that Petitioner sold Lewis and Beck "pure fentanyl." At best, this constitutes an inference based on the discovery of trace amounts of fentanyl, but not heroin, on the blue straw. *Id.*, ¶39. Second, even if a sale of "pure fentanyl" was a reasonable inference from the evidence, that inference alone is not a proper basis under Ohio law upon which to reach a second inference that Petitioner *knew* the substance was fentanyl or contained fentanyl. Moreover, it was certainly not permissible for the Eleventh District to reach its *third* (and necessary) inference that, because the substance contained fentanyl, Petitioner must have known it contained fentanyl, and because he knew it contained fentanyl, he must have knowingly deceived Lewis and Beck about its contents.

(Doc. No. 7 at 7-8) (footnotes omitted). Butcher further argues that "while such a finding is implicit in its decision, the Eleventh District never explicitly found that Petitioner knowingly engaged in any of the foregoing conduct." (*Id.* at 8 n.2.) Therefore, to the extent the state appellate court "did not intend to imply such a finding," Butcher argues the state appellate court's "review of his convictions was insufficient as a matter of law in light of its failure to review every element of his offenses." (*Id.*)[1]

Butcher raised a sufficiency of the evidence claim to both the state appellate court and the Supreme Court of Ohio. (Doc. No. 6-1, Ex. 26, 33.) The state appellate court considered this claim on the merits and rejected it as follows:

---

[1] The Court notes that these arguments were never presented to the state courts. Butcher did not raise these arguments on appeal to the Supreme Court of Ohio (Doc. No. 6-1 Ex. 33), nor was it presented in his 26(B) application. (Doc. No. 6-1, Ex. 37.) It is well-established that the factual and legal bases for a habeas claim must be the same as those presented to the state courts. *Williams v. Bagley*, 380 F.3d 932, 969 (6th Cir. 2004) (quoting *Wong v. Money,* 142 F.3d 313, 322 (6th Cir.1998)); *Owens v. Perry*, No. 1:17-cv-00105, 2019 WL 6250763, at *8 (M.D. Tenn. Nov. 22, 2019). Relatedness of the issues between a claim presented to the state courts and one not presented to the state courts will not save the unpresented claim. *Lott v. Coyle*, 261 F.3d 594, 607 (6th Cir. 2001). Therefore, this portion of Ground One is procedurally defaulted. Nor can Butcher show cause and prejudice to excuse the default. Ineffective assistance of counsel cannot serve as grounds to excuse the procedural default where he was not entitled to counsel on discretionary appeal or in collateral proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). Butcher also fails to present new, reliable evidence of actual innocence to excuse the procedural default.

18

{¶ 28} Under his first two assignments, appellant maintains that his convictions are not supported by sufficient evidence and are against the manifest weight of the evidence. When a conviction is not against the manifest weight of the evidence, then there is necessarily sufficient evidence to support the conviction. *State v. Craig*, 11th Dist. Lake No. 2016-L-113, 2017-Ohio-8939, ¶ 52.

{¶ 29} "When an appellate court analyzes a conviction under the manifest weight standard[,] it must review the entire record, weigh all of the evidence and all of the reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. [*State v. Thompkins*, 78 Ohio St.3d 380,] at 387, 678 N.E.2d 541, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. Only in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment. *Id.*" *State v. Watson*, 3rd Dist. Union No. 14-09-01, 2009-Ohio-6713, ¶ 33.

{¶ 30} As previously discussed, appellant was convicted of two counts of corrupting another person with drugs in violation of R.C. 2925.02(A)(1) and (A)(3). These provisions state:

{¶ 31} "(A) No person shall knowingly do any of the following:

{¶ 32} "(1) By force, threat, or deception, administer to another or induce or cause another to use a controlled substance;

{¶ 33} "* * *

{¶ 34} "(3) By any means, administer or furnish to another or induce or cause another to use a controlled substance, and thereby cause serious physical harm to the other person, or cause the other person to become drug dependent * * *."

{¶ 35} The first "corrupting" count, R.C. 2925.02(A)(1), was based upon Lewis's use of the fentanyl in the bathroom of the Meridian Street house, immediately following the sale. The second "corrupting" count, R.C. 2925.02(A)(3), was based upon Lewis's snorting fentanyl in his parents' garage. Although there was a third "corrupting" count pertaining to Beck's use, the jury rendered a not guilty verdict.

{¶ 36} In his primary challenge to both "corrupting" convictions, appellant asserts that the evidence establishes that it was Byron, not he who sold drugs. He notes that there was evidence showing that Byron was the first person

Beck called in setting up the purchase and when the drug force detectives first spoke with Lewis at the hospital, he referred to Byron as the seller.

{¶ 37} At trial, the lead detective testified as to why, despite the initial statement Lewis made at the hospital, Byron was not considered a serious suspect. According to the detective, Lewis also informed them that Beck was involved in the purchase. While interviewing Beck, he told the detectives that appellant sold the drugs. After that, Lewis also agreed that appellant was the seller. It appears that Lewis said Byron sold the drugs at the initial interview because he heard Beck use that name while driving to the Meridian Street house. Lewis was never in doubt of who sold the drugs, but was wrong about his name.

{¶ 38} As part of his trial testimony, Beck stated that he saw appellant give the drugs to Lewis while the three were in the bathroom together. Furthermore, both Beck and Lewis identified appellant as the perpetrator when they were shown the photo array of possible suspects. Both men also confirmed the identification at trial. Hence, there was ample evidence upon which the jury could find that appellant sold the fentanyl to Lewis.

{¶ 39} In regard to both "corrupting" counts, appellant further argues that there was no evidence demonstrating that the substance he gave to Lewis was fentanyl. As to this point, the evidence shows that, in using the remainder of the drugs he received from appellant, he snorted the fentanyl in his parents' garage. Also, his mother found a cut-off straw in the pocket of his shorts after he was taken to the hospital. In relation to the straw, the state presented evidence showing that traces of fentanyl, but no heroin was found inside it.

{¶ 40} As to the count under R.C. 2925.02(A)(1), appellant claims that there was no evidence that he deceived either Lewis or Beck. However, there is no dispute that Lewis and Beck went to the Meridian Street house to buy heroin, and that appellant sold them pure fentanyl. Thus, the "deception" element was met.

{¶ 41} As to the "corrupting" count under R.C. 2925.02(A)(3), there is likewise no dispute that appellant "furnished" the fentanyl to Lewis that he snorted the night after the purchase. Moreover, there is no dispute that Lewis suffered serious physical harm as a result of taking the fentanyl, in that he lost consciousness and nearly died. Because the jury did not lose its way in finding that all elements of both "corrupting" counts were satisfied, appellant's conviction on those charges are not against the manifest weight of the evidence.

{¶ 42} Concerning appellant's conviction on the two aggravated trafficking counts under R.C. 2925.03(A), appellant reasserts his argument that he was

not the seller. For reasons stated, there is considerable evidence from which the jury could find that appellant offered and sold the drugs.

{¶ 43} Appellant's fifth conviction was for failure to appear under R.C. 2937.29 and 2937.99. He argues that, to be convicted of this crime, a defendant must have been released on his own recognizance prior to failing to appear for trial. He also argues that, since he was released on bond prior to the first scheduled trial in March 2016, the state's evidence is insufficient to establish a violation of the two statutes. In response, the state does not contest appellant's argument. Moreover, the record verifies that appellant was not released on his own recognizance when he did not appear for trial. Accordingly, appellant's conviction for failure to appear must be vacated as not supported by sufficient evidence.

{¶ 44} To the limited extent that the conviction for failure to appear must be vacated, appellant's first and second assignments have merit. Appellant's conviction on the remaining four offenses are affirmed.

(Doc. No. 6-1, Ex. 28.) *See also State v. Butcher*, 2018 WL 6483403, at **3-5.

The Due Process Clause of the Fourteenth Amendment requires that a criminal conviction be supported by proof beyond a reasonable doubt with respect to every fact necessary to constitute the offense charged. *In re Winship*, 397 U.S. 358, 363–64, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The standard for determining if a conviction is supported by sufficient evidence is "whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 317, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In making such a determination, a district court may not substitute its own determination of guilt or innocence for that of the factfinder, nor may it weigh the credibility of witnesses. *Id. See also Walker v. Engle*, 703 F.2d 959, 970 (6th Cir. 1983). Moreover, federal courts are required to give deference to factual determinations made in state court and "[a]ny conflicting inferences arising from the record ... should be resolved in favor of the prosecution." *Heinish v. Tate*, 1993 WL 460782, at *3 (6th Cir. 1993) (citing *Walker*, 703 F.3d at 969–70.) *See also Wright v. West*, 505 U.S. 277,

21

296, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (the deference owed to the trier of fact limits the nature of constitutional sufficiency review.)

Consistent with these principles, the Supreme Court has emphasized that habeas courts must review sufficiency of the evidence claims with "double deference:"

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference.  First, on direct appeal, 'it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial.  A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury.' *Cavazos v. Smith*, 565 U.S. 1, ——, 132 S.Ct. 2, 4, 181 L.Ed.2d 311 (2011) (*per curiam*).  And second, on habeas review, 'a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U.S. 766, ——, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 132 S.Ct. 2060, 2062, 182 L.Ed.2d 978 (2012).  Under this standard, "we cannot rely simply upon our own personal conceptions of what evidentiary showings would be sufficient to convince us of the petitioner's guilt," nor can "[w]e ... inquire whether any rational trier of fact would conclude that petitioner ... is guilty of the offenses with which he is charged."  *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  Rather, a habeas court must confine its review to determining whether the state court "was unreasonable in its conclusion that a rational trier of fact could find [petitioner] guilty beyond a reasonable doubt based on the evidence introduced at trial."  *Id.* (emphasis in original) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009)).

Upon careful review of the trial transcript, the Court finds the state appellate court reasonably determined Butcher's conviction was supported by sufficient evidence.  In resolving Butcher's sufficiency of the evidence claim, the state appellate court accurately summarized the evidence and correctly identified the applicable law.  As the state appellate court noted, both Beck and Lewis identified Butcher

as the seller.  (Doc. No. 6-3 at 273; Doc. No. 6-4 at 43.)  Butcher told Beck to bring Lewis inside to make sure he was not a cop.  (Doc. No. 6-4 at 20.)  Lewis testified he felt threatened by Butcher during his time inside the house, as he felt he needed to do some of the drugs in the house to show he was not a cop and complete the purchase.  (Doc. No. 6-3 at 245-48, 303.)  Both Beck and Lewis thought they were buying heroin.  (Doc. No. 6-3 at 263, 281, 291, 303; Doc. No. 6-4 at 33, 60.)  Lewis experienced two overdoses from the drugs purchased from Butcher (Doc. No. 6-3 at 180-85, 249-52; Doc. No. 6-4 at 26-29), including one immediately after leaving the house where they purchased the drugs from Butcher, and in both instances, Lewis lost consciousness and nearly died.  (Doc. No. 6-3 at 180-85, 249-52; Doc. No. 6-4 at 26-29.)  A task force officer testified overdoses were becoming more common as a result of fentanyl being present (Doc. No. 6-4 at 123-24.)  Forensic testing of the cut-off straw Lewis used to snort the drugs on the second occasion revealed trace amounts of fentanyl, but no heroin.  (Doc. No. 6-3 at 191-92; Doc. No. 6-4 at 210, 216.)

It is not for this Court to weigh evidence or determine credibility.  *See Jackson*, 443 U.S. at 317-19; *Coleman*, 566 U.S. at 651.  While Butcher interprets evidence in a light most favorable to him, that is not the standard – the Court must view the evidence in a light most favorable to the prosecution.  *Jackson*, 443 U.S. at 319.

Under the "doubly deferential" standard, the Court cannot say the state court "was unreasonable in its conclusion that a rational trier of fact could find [petitioner] guilty beyond a reasonable doubt based on the evidence introduced at trial."  *Brown v. Konteh*, 567 F.3d at 205.  Accordingly, it is recommended the Court find Ground One lacks merit.

### 2.    Ground Two

In Ground Two, Butcher challenges the photo lineup used to identify him, arguing he was the only individual in the line up with a facial tattoo, another individual was identified by name, and the

23

identification took place several days after the sale of drugs and after the victim had lost consciousness at least twice.[2]  (Doc. No. 1 at 7.)  Butcher also argues the identification procedure was contrary to Ohio law. (*Id.*)

Respondent argues that Butcher's argument that the identification procedure was contrary to Ohio law is non-cognizable on federal habeas review.  (Doc. No. 6 at 25.)  Respondent argues that the state appellate court's rejection of Ground Two on the merits "is neither an unreasonable application of United States Supreme Court precedent nor an unreasonable determination of the facts in the record."  (*Id.* at 32.)

In his Traverse, Butcher asserts his due process rights were violated as a result of an "unduly suggestive" photo lineup and that the circumstances surrounding the photo lineup "did not render Lewis' and Beck's identification of Petitioner reliable."  (Doc. No. 7 at 10-11.)

Butcher raised a due process claim based on the photo lineup to both the state appellate court and the Supreme Court of Ohio.  (Doc. No. 6-1, Ex. 26, 33.)  The state appellate court considered this claim on the merits and rejected it as follows:

> {¶ 45} Under his third assignment, appellant raises two arguments regarding the denial of his motion to suppress the pretrial identifications by Lewis and Beck. First, he contends that the trial court failed to properly explain the factual and legal bases of its ruling, as mandated under Crim.R. 12(F). Second, appellant claims that both identifications should have been suppressed because the photo array was unduly suggestive and does not comply with the requirements of R.C. 2933.83. We address appellant's second argument first.
>
> {¶ 46} "In *Neil v. Biggers* (1972), 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401, the United States Supreme Court held that in order to determine the admissibility of a pretrial identification of a suspect by a witness, a trial court must engage in a two-step analysis. First, the court must determine whether the identification procedure was unduly suggestive. If the procedure was overly suggestive, then the court must proceed to the second step in which it ascertains whether there was a substantial likelihood of

---

[2] Butcher fails to identify what rights under the U.S. Constitution were violated by the photo lineup in his Petition.  (Doc. No. 1 at 7.)

misidentification. *Biggers* at 197-199, 93 S.Ct. 375. As a result, before identification testimony will be suppressed, the court must find that the procedure employed by the police was so impermissibly suggestive as to give rise to the substantial likelihood of misidentification.

{¶ 47} "The burden is on the defendant to prove that the procedure employed was unfairly suggestive and that the resulting identification was unreliable based on the totality of the circumstances standard adopted in *Biggers. State v. Green* (1996), 117 Ohio App.3d 644, 652-653, 691 N.E. 316; *State v. McDade* (Sept. 25, 1998), 11th Dist. No. 97-L-059, 1998 WL 682360, at 4. If the defendant fails to satisfy the first part of this burden, neither the trial court nor an appellate court need consider the totality of the circumstances. *Green* at 653, 117 Ohio App.3d 644, 691 N.E.2d 316; *McDade* 1998 WL 682360 at 4. However, if the defendant satisfies his initial burden of proof, the burden of persuasion falls upon the state to show that the evidence is valid. *State v. Kuzma* (Dec. 3, 1993), 11th Dist. No. 93-P-0019, 1993 WL 545129, at *2, 1993 Ohio App. LEXIS 5768, at 5, quoting *State v. Hensley* (1992), 75 Ohio App.3d 822, 828-829, 600 N.E.2d 849." *State v. Perry*, 11th Dist. Trumbull No. 2002-T-0035, 2003-Ohio-7204, ¶ 14-15.

{¶ 48} In determining a motion to suppress a pretrial identification, the "'primary evil to be avoided is "a very substantial likelihood of irreparable misidentification.""' *State v. Gaines*, 11th Dist. Trumbull No. 2015-T-0061, 62 N.E.3d 708, 2016-Ohio-1312, ¶ 20, quoting *Biggers*, 409 U.S. at 198, 93 S.Ct. 375.

{¶ 49} In *Gaines*, the defendant argued that the photo array showed to the victim was unduly suggestive because he was the only person in the six photographs that had dreadlocks. At the outset of our analysis, this court quoted the Eighth Appellate District: "'Photographic displays have been held not unduly suggestive even when certain characteristics of the defendant or his photograph are set apart from others.' *State v. Conroy*, 8th Dist. Cuyahoga No. 72987, 1998 WL 655508, *4 (Sept. 24, 1998) * * *." *Id.* at ¶ 21. Based upon this, we concluded that, even though the defendant was the only depicted person who had "true" dreadlocks, this one distinction was insufficient to render the photo array unduly suggestive. *Id.* at ¶ 23.

{¶ 50} Here, appellant maintains that the photo array shown to Lewis and Beck was unduly suggestive because he was the only depicted man who had a facial tattoo. As to this point, a review of his photo demonstrates that it cannot be discerned whether he has a facial tattoo or a large blemish on the side of his face. This is true regardless of whether the photo is in color or black and white. More importantly, a comparison of appellant's photo to the other five photos shows that the presence of the large blemish is the only significant distinction between them. All six photos contain young African-American

males with short hair. Therefore, the fact that appellant is the sole individual with a large blemish/tattoo does not render the photo array unduly suggestive. In light of this, it is not necessary to address the second part of the *Biggers* standard for deciding the constitutionality of the pretrial identification procedure.

(Doc. No. 6-1, Ex. 28.)  *See also State v. Butcher*, 2018 WL 6483403, at **5-6.

As to the question of whether the photo lineup violated Ohio statute, it is well established that, in conducting habeas review, "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). As such, the Supreme Court has explained "it is not the province of a federal habeas court to reexamine state-court decisions on state-law questions." *Id*. at 67-68. *See also Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007); *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001). Stated another way, a state court's interpretation of state law is binding upon a federal habeas court. *See Bradshaw v. Richey*, 546 U.S. 74, 76, 126 S.Ct. 602, 163 L.Ed.2d 407 (2005); *Bibbs v. Bunting*, 1:16-cv-02069, 2017 WL 4083558, at *15 (N.D. Ohio May 17, 2017). *See also Thompson v. Williams*, 685 F. Supp. 2d 712, 721 (N.D. Ohio 2010) (stating "a federal court may not second-guess a state court's interpretation of its own procedural rules.") (citing *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir.1988)). "Federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 765, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990). *See also Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law.")

Regarding due process rights and photo lineups, the Sixth Circuit has explained:

Due process protects an accused against the introduction of evidence that results from an unreliable identification obtained through unnecessarily suggestive procedures. *See Moore v. Illinois*, 434 U.S. 220, 227 (1977). When reviewing a petitioner's claim that an out-of-court identification violated his due process rights, a court's primary concern is with the reliability of the evidence. *See Manson v. Brathwaite*, 432 U.S. 98, 114 (1977). The court first considers whether the pre-trial identification was unnecessarily suggestive,

26

and then whether, under the totality of the circumstances, the identification was nonetheless reliable. *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972); *Mills v. Cason*, 572 F.3d 246, 251 (6th Cir. 2009).

To be unduly suggestive, a pre-trial identification procedure must "steer[ ] the witness to one suspect or another, independent of the witness's honest recollection." *Wilson v. Mitchell*, 250 F.3d 388, 397 (6th Cir. 2001) (citing *United States v. Russell*, 532 F.2d 1063, 1068 (6th Cir. 1976)).

*Dalmida v. Turner*, 2020 WL 7873080, at *3 (6th Cir. July 22, 2020).  In considering the totality of the circumstances to determine whether the identification was nonetheless reliable, courts consider factors such as: "(1) the opportunity of the witness to view the defendant; (2) the degree of the witness's attention; (3) the accuracy of the prior description of the defendant; (4) the level of certainty shown by the witness at the pretrial identification; and (5) the length of time between the initial observation and the identification."  *Id.* at *4 (citing *Manson*, 432 U.S. at 114; *Biggers*, 409 U.S. at 199-200).

Pursuant to 28 U.S.C. § 2254(e)(1), "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." *See also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012) ("[R]egardless of whether we would reach a different conclusion were we reviewing the case *de novo*, the findings of the state court must be upheld unless there is clear and convincing evidence to the contrary.") (*quoting Clark v. O'Dea*, 257 F.3d 498, 506 (6th Cir. 2001) (applying 28 U.S.C. § 2254(e)(1)); *see also Wood v. Allen*, 558 U.S. 290 (2010) ("a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance"). The state appellate court's factual description of the five other men in both photo arrays noted that they all were young African-American men with short hair.  Butcher does not challenge this factual finding and the Court, therefore, presumes it is accurate.

27

Regarding Butcher's assertion that he was the only one in the photo array with a facial marking, Butcher offers no evidence indicating that either Beck or Lewis ever informed the police that the suspect had a tattoo or other marking on his face before viewing the photo array; therefore, the photo array cannot reasonably be deemed unduly suggestive for including only one individual with a visible tattoo. *Campbell v. Lazaroff*, Case No. 1:15-cv-01302, 2016 WL 6876299, at *10 (N.D. Ohio July 19, 2016), *report and recommendation adopted by* 2016 WL 6833744 (N.D. Ohio Nov. 21, 2016).

As the state appellate court's statement of the law is correct and its application of the law was not unreasonable, this court must defer to the state appellate court's finding that Butcher failed to prove the photo array was unduly suggestive. *Id.* at *11. Because Butcher failed to carry his burden of proof with respect to step one of the analysis, the Court is not required to address whether the identification was reliable. *Id.*

Accordingly, it is recommended the Court find Ground Two lacks merit.

**3.      Ground Three**

In Ground Three, Butcher argues he received ineffective assistance of appellate counsel when appellate counsel: (1) submitted "deficient briefs at all stages of the direct appeal," as they "contain arguments which are wholly inadequate, and are at times incoherent, which deprived Petitioner of due process in State appellate court" and (2) failed to assert "a meritorious argument regarding extraneous, highly prejudicial evidence regarding Petitioner's arrest which was improperly permitted at trial." (Doc. No. 1 at 8.)

Respondent asserts that Ground Three is procedurally defaulted. (Doc. No. 6 at 33.) With respect to Butcher's argument that appellate counsel submitted deficient briefs, Respondent argues this claim has never been raised before the state courts and is therefore procedurally defaulted. (*Id.*) With respect to Butcher's claim about improperly admitted evidence, Respondent asserts that this claim is procedurally

defaulted as Butcher failed to appeal the denial of his 26(B) application to the Supreme Court of Ohio. (*Id.* at 34.)  Respondent maintains Butcher cannot show cause or prejudice to excuse either default, nor can he show he is actually innocent, and the procedural default must be excused to prevent a miscarriage of justice.  (*Id.*)  Respondent did not brief the merits of Ground Three.[3]  (Doc. No. 6.)

In his Traverse, Butcher admits this claim was not fully exhausted, as the appeal of the state appellate court's denial of his 26(B) application was still pending before the Supreme Court of Ohio. (Doc. No. 7 at 11.)  However, Butcher argues that should the Supreme Court of Ohio deny relief, his claim of ineffective assistance of appellate counsel "is both meritorious and cognizable before this Court."  (*Id.* at 12.)

In his Supplemental Traverse, which the Court allowed after the Supreme Court of Ohio declined jurisdiction over the appeal of the state appellate court's denial of Butcher's 26(B) application, Butcher argues that he received ineffective assistance of counsel where appellate counsel: (1) failed to raise an assignment of error regarding the "highly prejudicial" and "irrelevant" evidence consisting of the testimony of Captain Brian Simcox; (2) "failed to adequately brief the issue of sufficiency of the evidence as it pertains to Appellant's convictions for Corrupting Another with Drugs"; and (3) failed to raise an argument of ineffective assistance of trial counsel where trial counsel failed to call Amber Keim as a witness in his case in chief.[4]  (Doc. No. 10 at 2-4.)

Respondent did not file a response to the Supplemental Traverse.

---

[3] The Court's Initial Order states, "**If Respondent moves to dismiss a ground for relief on procedural default, he or she shall still brief the merits of the claim.**"  (Doc. No. 3 at 2) (emphasis in original). The Court cautions Respondent against any future noncompliance with the orders of this Court.

[4] Butcher raised the argument regarding Keim's testimony for the first time in his Supplemental Traverse. Claims raised for the first time in a Traverse and not a habeas petition are not properly before the Court. *Royster v. Warden*, No. 18-3362, 2018 WL 8138770, at *2 (6th Cir. Aug. 23, 2018) (citing *Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005); *Jalowiec v. Bradshaw*, 657 F.3d 293, 312 (6th Cir. 2011), *as amended* (Nov. 23, 2011); *Murphy v. Ohio*, 551 F.3d 485, 502 (6th Cir. 2009)).

A careful review of the record reveals that Butcher raised all of these claims in his 26(B) application.  (Doc. No. 6-1, Ex. 37.)  The Court addresses the merits of Butcher's ineffective assistance of appellate counsel claims below.

The record reflects Butcher raised these ineffective assistance of counsel claims to both the state appellate court and the Supreme Court of Ohio.  (Doc. No. 6-1, Ex. 37; Doc. No. 7-2.)  The state appellate court considered these claims on the merits and rejected it as follows:

> Under his fourth issue, appellant contends that appellate counsel was ineffective for failing to argue the trial court's decision to allow a police officer to testify about the steps he took to apprehend appellant after he did not appear on the first scheduled trial date.  The officer testified he had to pull his firearm on appellant, had to surround a residence with other officers when appellant ran into it to escape arrest, and had to bust down a door to get to him.  Appellant claims this testimony was not needed to prove the offense of failure to appear.
>
> Failure to appear is defined as when a defendant, after being released on recognizance, recklessly fails to attend a court proceeding as expressly required.  *State v. Hicks*, 4th Dist. Highland No. 08CA6, 2009-Ohio-3115, ¶ 31.  The police officer's testimony was relevant for establishing that appellant acted recklessly in not appearing for trial.  Thus, the performance of appellate counsel was not deficient for failure to raise this issue.
>
> Under his last two issues, appellant submits that appellate counsel should have asserted additional arguments regarding sufficiency of the evidence for his convictions for corrupting another person with drugs.  First, as to his conviction under R.C. 2925.02(A)(3), he argues that there was no evidence establishing that Lewis's second overdose in his parents' garage was caused by fentanyl.  However, in analyzing the sufficiency of the state's evidence in our prior opinion, we noted that the state presented evidence that only traces of fentanyl, i.e., no heroin, was detected in the cut-off straw that was found in Lewis' shorts at the hospital.  *State v. Butcher*, 11th Dist. Portage No. 2016-P-0062, 2018-Ohio-4943, ¶ 39.  Since a reasonable juror could find from this evidence that the overdose was due to fentanyl, appellant would not have prevailed on this issue.
>
> In conjunction, appellant also argues that appellate counsel was deficient for not seeking reversal on appellant's conviction because there was some evidence that Lewis was trying to commit suicide when snorting the remainder of the drug in the garage.  But, when reviewing a conviction under

R.C. 2925.02(A)(3), evidence regarding the victim's suicidal tendencies is irrelevant to determining the defendant's criminal responsibility because it does not alter the voluntary nature of his act in providing the drugs. *State v. Price*, 8th Dist. Cuyahoga No. 107096, 2019-Ohio-1642, ¶ 88-90. Thus, this argument fails.

Under his final issue, appellant maintains that appellate counsel should have challenged his corrupting conviction under R.C. 2925.02(A)(1) on the basis that the state failed to prove that he knew the substance he was giving Lewis was fentanyl. However, there is conflicting authority as to whether knowledge may be inferred from possession. *See Young v. Commonwealth*, 275 Va. 587, 659 S.E.2d 308 (Va.2008) (possession of drugs alone is not sufficient to infer guilty knowledge); *Gartrell v. State*, 626 So.2d 1364 (Fla.1993) (inference is permissible); *People v. Stark*, 691 P.2 334 (Colo.1984) (inference is permissible); *State v. Gillum*, 574 S.W.3d 766 (Mo. App.2019) (inference is permissible).

Moreover, we must bear in mind that appellate counsel need not raise every possible issue to ender constitutionally effective assistance. *State v. Sanders*, 94 Ohio St. 3d, 150.

Appellant has failed to establish that appellate counsel's representation fell below the standard of reasonableness or that there was a reasonable probability that he would have been successful. *State v. Sanders*, 94 Ohio St.3d 150, 151, 761 N.E.2d 18 (2002), quoting *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.E.3d 674 (1984).

(Doc. No. 6-1, Ex. 38.)

In order to establish ineffective assistance of counsel, a petitioner must demonstrate that his counsel's conduct was so below acceptable standards of representation that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment to the United States Constitution. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A petitioner also must demonstrate that a trial counsel's performance prejudiced the petitioner's defense to such an extent that it rendered the proceeding unfair. *Id*. To establish prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In other words, a counsel's deficient performance must have "caused the defendant

31

to lose what he otherwise would probably have won" and it must have been "so manifestly ineffective that defeat was snatched from the hands of probable victory."  *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

"[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Strickland*, 466 U.S. at 690.  Mere disagreements by a defendant with tactics or strategies employed by counsel are not enough to support a claim of ineffective assistance of counsel and there is a presumption that the challenged conduct of a petitioner's counsel was a matter of strategy.  *Id.* at 689.  *See also United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

As explained by the United States Supreme Court:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult.  The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ——, 129 S.Ct. 1411, 173 L.Ed.2d 251.  The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ——, 129 S.Ct. 1411, 173 L.Ed.2d 251.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland* 's deferential standard.

*Harrington*, 562 U.S. at105.  *See also Kennedy v. Warren*, 428 F. App'x 517, 520 (6th Cir. May 3, 2011); *Phillips v. Sheldon,* 2014 WL 185777, at **14-15 (N.D. Ohio Jan. 16, 2014).

The Supreme Court has held a defendant is entitled to effective assistance of counsel in his first appeal as a matter of right.  *Evitts v. Lucey*, 469 U.S. 387, 396, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985).  Thus, the two-part test enunciated in *Strickland* is applicable to claims of ineffective assistance of appellate counsel.  *Smith v. Robbins*, 528 U.S. 259, 285, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000).  *See also*

*Hand v. Houk*, 871 F.3d 390, 410 (6th Cir. 2017).  An appellant has no constitutional right, however, to have every non-frivolous issue raised on appeal, *Jones v. Barnes*, 463 U.S. 745, 750-54, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983), and tactical choices regarding issues to raise on appeal are properly left to the sound professional judgment of counsel.  *See Perry*, 908 F.2d at 59.  Indeed, as the Sixth Circuit recently explained, the "'[m]ere failure to raise a potentially viable claim is not enough, as '[a]ppellate counsel need not raise every non-frivolous claim on direct appeal.'"  *Hand*, 871 F.3d at 410 (quoting *Sanders v. Curtin*, 529 F. App'x 506, 521 (6th Cir. 2013)).  "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002) (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)).

Here, the Court finds the state appellate court reasonably determined appellate counsel was not ineffective for failing to raise an assingment of error that the trial court erred in allowing Captain Simcox to testify.  Butcher has no constitutional right for counsel to raise every non-frivolous issue on appeal, and he cannot show that this argument is clearly stronger than those presented on appeal.  Tactical choices regarding issues to raise on appeal are properly left to the sound professional judgment of counsel, and that is what happened here.

With respect to appellate counsel's purported failure to adequately brief an argument relating to Butcher's lack of knowledge in terms of sufficiency of the evidence, while appellate counsel's brief to the state appellate court was not a model of clarity, a careful review of the record reveals that appellate counsel did indeed challenge whether the State had proven knowledge as part of a sufficiency of the evidence argument:

> **Counts: 1& 5, 3 &4.**  (B) ***Knowingly,*** and ***fentanyl***.  Appellant argues there can be no proof of "knowingly", or fentanyl, as there is no evidence that appellate [sic] is the perpetrator.  There is no evidence that fentanyl existed within the scope of this case to prove the element of fentanyl in the crimes.  i) knowingly-  There is not the requisite proof produced that Appellant is the

33

> perpetrator, that he had such conduct and that he acted knowing that his
> conduct would cause a certain result, here the corruption of drugs against
> Dalton or trafficking of fentanyl to Beck and/or Dalton.

(Doc. No. 6-1, Ex. 26 at 11.)  (*See also id.* at 16) ("There is neither the requisite proof produced that Appellant is the perpetrator and knowingly sold, delivered, bartered, exchanged, transferred, or gifted, or offered thereof in any capacity . . . nor proof that Appellant offered by presented for acceptance or rejection, fentanyl.")  Furthermore, even assuming appellate counsel had failed to properly brief this argument, the state appellate court reasonably found Butcher could not show ineffective assistance of counsel as "there is conflicting authority as to whether knowledge may be inferred from possession." (Doc. No. 6-1, Ex. 38.)  Again, tactical choices regarding issues to raise on appeal are properly left to the sound professional judgment of counsel.

The Court likewise finds the state appellate court reasonably determined appellate counsel was not ineffective for failing to raise an argument regarding evidence of Lewis' suicidal thoughts around the time of the second overdose in light of the state appellate court's binding determination of Ohio law.

As the Supreme Court made clear in *Harrington*, "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  562 U.S. at 105.  Under this deferential standard, the Court finds the state appellate court reasonably determined appellate counsel was not ineffective.  It is therefore recommended Butcher's third ground for relief be denied.

## V. Conclusion

For all the reasons set forth above, it is recommended that the Petition be DENIED.


Date: September 6, 2022                              *s/ Jonathan Greenberg*
                                                    Jonathan D. Greenberg
                                                    United States Magistrate Judge

34

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.  *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).